IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARGARET LOVE VELAZQUEZ** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-CV-3012 |
| | : | |
| **VALU-PLUS - STORE #4** | : | |
| | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                              **April \_\_\_\_\_ , 2003**

Plaintiff Margaret Love Velazquez brings this action against Defendant Valu-Plus - Store Number 4 ("Valu-Plus")[1] alleging a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e(b) (Count I), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 195 et seq. (Count II). Now before the Court is Defendant's Motion for Summary Judgment. For the following reasons, the Court will grant the Motion.

**I.    Background**

Viewed in the light most favorable to Plaintiff, the facts are as follows. Plaintiff worked at Valu-Plus' Store Number 4 as a full-time stock person from January 2000 until her resignation in April 2001. (Deposition of Margaret Velazquez ("Pl. Dep.") at 25, 33, 62.) At all relevant times, Plaintiff's direct supervisors were Store Manager Simon Dass ("Dass") and Assistant Store Manager Gladys Gonzalez. (Pl. Dep. at 29.) Dass reported to District Manager Paul Friedrich ("Friedrich"). (Deposition of Simon Dass ("Dass Dep.") at 15-16.)

Livingston Parris ("Parris") worked as a stock person at Store Number 4 for approximately three months in the Winter and Spring of 2001. (Deposition of Livingston Parris

---

[1] Valu-Plus - Store Number 4 is a branch of Valu-Plus of Pennsylvania, Inc. (Amended Compl. ¶ 2.)

("Parris Dep.") at 7-8.)  Because Parris and Plaintiff held similar positions, Parris had no supervisory authority over Plaintiff.  (Pl. Dep. at 37; Parris Dep. at 7.)  During the week of March 26, 2001, Plaintiff claims that Parris subjected her to repeated incidents of sexual harassment including:  Parris bumped Plaintiff in the forearm without apologizing on more than one occasion (Pl. Dep. 38 - 39);  Parris told Plaintiff on several occasions that she had a "nice butt" (Pl. Dep. at 38-40, 42, 46);  Parris threatened to hit Plaintiff (Pl. Dep. at 150-151);  and finally, Parris bragged to a male co-worker that because he had been intimate with one female co-worker, he could get Plaintiff "into bed" as well.[2]  (Pl. 40 - 41.)

On or about March 28, 2001, Plaintiff complained about these incidents to Dass.[3]  Her written complaint stated:

> I was told that Parris would hit me on Friday.  And he told me that he would hit me also.  And he also said if he got a person in bed he would get me too! And he would walk by and hit in the arm.  And not say I'm sorry.

(Def. Mem., Ex. I.)  The March 28, 2001 complaint was the first time Plaintiff had complained about Parris.  (Pl. Dep. at 44.)

---

[2]  Plaintiff further claims that on Saturday, March 31, 2001, the day of Parris' discharge, Parris "called [her] a slut," and said she had a "beer butt" and said that he would "whip her butt" and "beat her ass."  (Pl. Dep. at 44, 160.)

[3]  Plaintiff's Amended Complaint alleges that she submitted her first complaint to Dass in person on March 28, 2001. (Amended Compl. ¶ 13; Pl. Dep. at 53.)  In her deposition she testified that she submitted that complaint on March 26, 2001. (Pl. Dep. at 53-56.)  Because Dass did not work on March 26 (Dass dep. at 37), and because the complaint references events which took place after March 26 (Pl. Dep. at 150 -152) it is more likely that Plaintiff submitted the complaint on or about March 28, 2001.  Indeed, in Plaintiff's deposition she acknowledged that the first complaint could have been filed on March 28, 2001 (Pl. Dep. at 151-152.)  Accordingly, for the purposes of this Motion, the Court will consider the complaint filed on or about March 28, 2001.

On March 30, 2001, Dass called District Manager Friedrich to report Plaintiff's allegations and to discuss other problems he was having with Parris. (Def. Mem. Ex. D ¶¶ 5-6; Dass Dep. at 40.) Friedrich instructed Dass to terminate Parris. (Def. Mem. Ex. K ¶ 4-7; Dass Dep. at 37-40.)

Later that day, Friedrich and Plaintiff spoke on the telephone regarding Parris. (Pl. Dep at 45, 47, 59, 118; Amended Compl. ¶ 15.) Plaintiff voiced her concerns about working with him and Friedrich informed her that Parris was being terminated. (Pl. Dep. at 48; Amended Compl. ¶ 15; Dass Dep. at 50.) According to Plaintiff, Friedrich said to her "we fired Parris, for you to come in Saturday [March 31, 2001], because we like the way you work." [4] (Pl. Dep. at 48; Amended Compl. ¶ 15.) When Plaintiff expressed concerns about continuing to work in Store Number 4, Friedrich offered to transfer her to another store, but she declined. (Def. Mem. Ex. K ¶ 6; Pl. Dep. at 95, 131-134.)

On Saturday, March 31, 2001, Friedrich called Plaintiff at the store to make sure that she had come to work. (Pl. Dep. at 71, 80.) Soon afterward, Parris arrived at the store and Dass terminated him. (Dass Dep. at 39-40, 46; Def. Mem. Ex. J; Pl. Dep. at 79.) After that day, Plaintiff stopped reporting to work, and on April 4, 2001, she filed a formal notice of separation. (Amended Compl. ¶¶ 60-63; Def. Mem. Ex. C.)

**II.   Legal Standard**

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled

---

[4] Dass terminated Parris when he arrived at the store on Saturday, March 31, 2001. (Dass Dep. at 39-40, 46; Def. Mem. Ex. J; Pl. Dep. at 79.)

to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The Court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### III. Analysis

Plaintiff has alleged claims of a hostile work environment based on sexual harassment in violation of both Title VII and the PHRA.[5] Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has concluded that a plaintiff may establish a Title VII violation if she can show that gender-based discrimination created a hostile or abusive working environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). To succeed on a hostile work

---

[5] Courts uniformly have held that the PHRA should be interpreted consistently with Title VII. See e.g. Weston v. Pennsylvania, 251 F.3d 402, 425 n.3 (3d Cir. 2001); Clark v. Commonwealth of Pennsylvania, 885 F. Supp. 694, 714 (E. D. Pa. 1995); Brennan v. National Tel. Directory Corp., 881 F. Supp. 986, 994 n. 5 (E. D. Pa. 1995). Accordingly, although the Court will analyze Plaintiff's claims within the framework of Title VII, the same analysis applies to Plaintiff's PHRA claims.

environment claim, a plaintiff must show that (1) she suffered intentional discrimination on account of her gender; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable woman in the plaintiff's position; and (5) the existence of respondeat superior liability.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

Valu-Plus argues that no reasonable jury could find it vicariously liable for any inappropriate actions of its former employee, Parris.  The Court agrees.

The Third Circuit has held that when a plaintiff alleges co-worker harassment, the employer is not liable unless it "knew or should have known of the harassment and failed to take prompt remedial action."  Andrews, 892 F.2d at 1486.  The remedy provided by an employer is "adequate" if it is "reasonably calculated to prevent further harassment."  Knabe v. Boury Corp., 114 F.3d 407, 412 n.8 (3d Cir. 1997).  Furthermore, "[w]hen an employer's response stops [the] harassment, there can be no Title VII liability."  Kunin v. Sears Roebuck and Co., 175 F.3d 289, 295 (3d Cir. 1999).

In this case, Valu-Plus terminated Parris within days of learning about his behavior.  There are few employer actions that can be considered more prompt or more calculated to prevent further harassment than immediate discharge of the alleged harasser, and indeed, remedial action short of termination has often been considered sufficient. See Knabe, 114 F.3d at 414 (finding that taking punitive action against the harassing employee is not necessary to insulate the employer from liability for a hostile work environment); see also Dougherty v. Henderson, 155 F. Supp. 2d 269, 281 (E.D. Pa. 2001).  Further, Plaintiff cannot claim that Valu-Plus's remedial action was inadequate merely because she quit her job before assessing its

5

effectiveness. Knabe, 114 F.3d at 415 ("[A] Plaintiff cannot survive summary judgment merely by failing to return to his or her job after the remedial action at issue is taken."). Rather, Plaintiff must present "evidence that there would have been a hostile work environment had she returned [to work] or that [the alleged harasser] would have felt free to continue his harassment upon her return." Id. at 413 (citations omitted). Although Plaintiff speculates that she might be harassed by someone at Value-Plus (either by a new employee or by Parris if he returned to the store to shop), the record reveals no evidence that Plaintiff had reason to believe that any harassment would continue after Parris's termination on March 31, 2001. (Pl. Dep. at 131.)

Accordingly, the Court concludes that Plaintiff has failed to establish respondeat superior liability and that her sexual harassment claims pursuant to both Title VII and the PHRA therefore must fail.[6] Andrews, 895 F.2d at 1482.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Valu-Plus's Motion for Summary Judgment. An appropriate Order follows.

---

[6] Because the Court has found that respondeat superior liability does not exist in this case, it need not apply the other Andrews factors to Plaintiff's sexual harassment claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET LOVE VELAZQUEZ | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-CV-3012 |
| | : | |
| VALU-PLUS - STORE #4 | : | |

## ORDER

     **AND NOW**, this _____ day of April, 2003, for the reasons stated in the accompanying memorandum, it is **ORDERED** that Defendant's Motion for Summary Judgment (docket no. 15) is **GRANTED**. Accordingly, **JUDGMENT** is entered in favor of Defendant and against Plaintiff. It is further **ORDERED** that this case is **CLOSED** for statistical purposes.

                                                                                                 **BY THE COURT:**

                                                                                                 **BRUCE W. KAUFFMAN, J.**